UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AIDA SEHIC COYNE,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
CARMEN FARINA, as Chancellor of New York City
Department of Education and individually; LAKISHA
MCDANIEL-LUKE, as Principal of I.S. 143 and
individually; PATRICIA GIL, as Assistant Principal of
I.S. 143 and individually; SOPHIA MATOS, as Assistant
Principal of I.S. 143 and individually,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Shawna C. MacLeod*
*Tel: (212) 356-3187*
*Matter No. 2018-023093*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................... 2

ARGUMENT

      POINT I

           PLAINTIFF'S TIME-BARRED CLAIMS
           SHOULD BE DISMISSED ....................................................................... 8

      POINT II

           THE SHRL AND CHRL CLAIMS SHOULD BE
           DISMISSED AGAINST ALL DEFENDANTS
           FOR PLAINTIFF'S FAILURE TO FILE A
           NOTICE OF CLAIM .................................................................................. 9

      POINT III

           PLAINTIFF'S SECTION 1981 CLAIMS ARE
           NOT COGNIZABLE ................................................................................. 10

      POINT IV

           THE SECTION 1983 CLAIMS AGAINST THE
           DOE SHOULD BE DISMISSED FOR
           PLAINTIFF'S FAILURE TO PLEAD A *MONELL*
           POLICY ................................................................................................... 10

      POINT V

           PLAINTIFF'S SECTION 1983 CLAIMS SHOULD
           BE DISMISSED AGAINST THE INDIVIDUAL
           DEFENDANTS ON QUALIFIED IMMUNITY
           GROUNDS .............................................................................................. 13

      POINT VI

           PLAINTIFF'S CLAIMS AGAINST THE
           INDIVIDUAL DEFENDANTS SHOULD BE

DISMISSED FOR LACK OF THEIR PERSONAL
INVOLVEMENT ...................................................................................... 15

    i.   Ms. Farina Should Be Dismissed from the
        Complaint as an Individual Defendant ............................................. 16

    ii.  Plaintiff's Retaliation Claims Should Be
        Dismissed Against the Individual Defendants................................... 16

POINT VII

PLAINTIFF'S NATIONAL ORIGIN HOSTILE
WORK ENVIRONMENT CLAIMS SHOULD BE
DISMISSED ........................................................................................... 17

CONCLUSION................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**                                                                   **Pages**

*AB v. Rhinebeck Cent. Sch. Dist.*,
   361 F. Supp. 2d 312 (S.D.N.Y. 2005) ....................................................................9

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002) ...........................................................................17

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ...............................................................................13, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................7, 8

*Birch v. City of N.Y.*,
   184 F. Supp. 3d 21 (E.D.N.Y. 2016) ............................................................13, 15

*Chinatown Apartments, Inc. v. N.Y.C. Transit Auth.*,
   100 A.D.2d 824 (1st Dep't 1984) ...............................................................10

*Costello v. N.Y. State Nurses Ass'n*,
   783 F. Supp. 2d 656 (S.D.N.Y. 2011) ..............................................................18

*Das v. Consol. Sch. Dist. of New Britain*,
   369 F. App'x 186 (2d Cir. 2010) ...............................................................14

*Doe v. Columbia Univ.*,
   831 F.3d 46 (2d Cir. 2016) ...........................................................................17

*Dressler v. N.Y.C. Dep't of Educ.*,
   10 Civ. 3769 (JPO),
   2012 U.S. Dist. LEXIS 44249 (S.D.N.Y. Mar. 28, 2012) ......................................12

*Duplan v. City of N.Y.*,
   888 F.3d 612 (2d Cir. 2018) ...........................................................................10

*Farrell v. Burke*,
   449 F.3d 470 (2d Cir. 2006) ...................................................................11, 15

**Cases**

*Fierro v. N.Y.C. Dep't of Educ.*,
　994 F. Supp. 2d 581 (S.D.N.Y. 2014) ................................................................12

*Hagan v. City of N.Y.*,
　39 F. Supp. 3d 481 (S.D.N.Y. 2014) ..................................................................15

*Hiralall v. Sentosacare, LLC*,
　2016 U.S. Dist. LEXIS 35781(S.D.N.Y. Mar. 18, 2016) .......................................9

*Hope v. Pelzer*,
　536 U.S. 730 (2002) ..........................................................................................14

*Hunter v. Bryant*,
　502 U.S. 224 (1991) ..........................................................................................13

*Hurdle v. Bd. of Educ.*,
　113 F. App'x 423 (2d Cir. 2004) ................................................................... 10-11

*Jett v. Dallas Indep. Sch. Dist.*,
　491 U.S. 701 (1989) ......................................................................................10, 11

*Lewinter v. N.Y.C. Dep't of Educ.*,
　2010 U.S. Dist. LEXIS 68493 (S.D.N.Y. July 9, 2010) ........................................9

*Littlejohn v. City of N.Y.*,
　795 F.3d 297 (2d Cir. 2015) ..........................................................................17, 18

*Looney v. Black*,
　702 F.3d 701 (2d Cir. 2012) ..............................................................................14

*Louis v. Praprotnik*,
　485 U.S. 112 (1988) ..........................................................................................11

*McCullum v. Cedar Graphics, Inc.*,
　609 F.3d 70 (2d Cir. 2010) ..................................................................................9

*Monell v. Dep't of Soc. Servs.*,
　436 U.S. 658 (1978) .................................................................................10, 12, 13

## Cases

*Moore v. City of N.Y.*,
   No. 08 Civ. 8879 (PGG),
   2010 U.S. Dist. LEXIS 19183 (S.D.N.Y. Mar. 1, 2010) ........................................................12

*Murdaugh v. City of N.Y.*,
   10 Civ. 7218, 2011 U.S. Dist. LEXIS 23333 (S.D.N.Y. Mar. 8, 2011) ...........................9, 17

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)..........................................................................................................8, 9

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007)....................................................................................................17

*Patterson v. Cty. of Oneida*,
   375 F.3d 206 (2d Cir. 2004)...............................................................................................9, 10

*Pearson v. Callahan*,
   555 U.S. 223 (2009)................................................................................................................13

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)................................................................................................................12

*Pena v. Deprisco*,
   432 F.3d 98 (2d Cir. 2005)......................................................................................................14

*Richard v. N.Y.C. Dep't of Educ.*,
   No. 16-CV-957 (MKB), 2017 U.S. Dist. LEXIS 50748
   (E.D.N.Y. Mar. 31, 2017) ......................................................................................................18

*Riddle v. Citigroup*,
   449 F. App'x 66 (2d Cir. 2011) ...............................................................................................8

*Robinson v. Via*,
   821 F.2d 913 (2d Cir. 1987)....................................................................................................15

*Salim v. Proulx*,
   93 F.3d 86 (2d Cir. 1996)..................................................................................................13, 15

*Shapiro v. N.Y.C. Dep't of Educ.*,
   561 F. Supp. 2d 413 (S.D.N.Y. 2008).....................................................................................12

*Wright v. Smith*,
   21 F.3d 496 (2d Cir. 1994)......................................................................................................15

## Statutes

20 U.S.C. § 1681, *et seq.*................................................................................................1

42 U.S.C. § 1981...............................................................................1, 2, 10, 15, 17

42 U.S.C. § 1983...............................................1, 2, 8, 9, 10, 11, 12, 13, 14, 15, 17

42 U.S.C. § 2000e-5(e)(1)............................................................................................8

42 U.S.C. §§ 2000e, *et seq.*.......................................................................................1

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 7

N.Y.C. Admin. Code § 8-101 ...................................................................................1, 9

N.Y. Educ. Law § 2590-i ...........................................................................................11

N.Y. Educ. Law § 2590-g ...........................................................................................11

N.Y. Educ. Law § 2590-h ...........................................................................................11

N.Y. Educ. Law § 3813 ................................................................................................9

N.Y. Exec. Law § 296................................................................................................1, 9

State Education Law § 3020-a .................................................................................7, 8

## PRELIMINARY STATEMENT

Plaintiff, a teacher with the New York City Department of Education ("DOE"), commenced this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1981; 42 U.S.C. § 1983; Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq.* ("Title IX"); the New York State Human Rights Law, N.Y. Exec. L. §§ 296, *et seq.* ("SHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("CHRL"). Plaintiff claims that she was discriminated against and subjected to a hostile work environment on the basis of her race (the Complaint indicates she self-identifies as "Caucasian"), national origin ("Yugoslavian"), and gender ("female") because the administrators of Intermediate School ("IS") 143 in upper Manhattan allegedly failed to protect her from alleged harassment by certain sixth-grade students. She also claims she was retaliated against for complaining about the students' harassment.

For the reasons set forth below, certain of the claims in Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

First, many of Plaintiff's claims are time-barred. Plaintiff's allegations of "harassment" appear to date back to 2011, but the relevant statute of limitations for each of Plaintiff's claims is, at most, three years (*e.g.*, under Section 1983, Title IX, SHRL, and CHRL). Since Plaintiff filed her Complaint on February 21, 2018, any claim that accrued before February 21, 2015, should be dismissed. Further, under Title VII, Plaintiff's only timely claims are those that arose, at most, 300 days before she filed her administrative charge on April 4, 2017. Therefore, any claim that arose before June 8, 2016 is time-barred under Title VII.

Second, Plaintiff's supplemental SHRL and CHRL claims are barred as a matter of law because Plaintiff failed to file a notice of claim—a prerequisite to a lawsuit asserting these claims against the DOE and its officers.

Third, Plaintiff's claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 should be dismissed. For one thing, Section 1981 does not provide plaintiffs with a separate private right of action against state actors—and persons asserting claims alleging constitutional violations against parties such as the DOE and its officers must proceed under 42 U.S.C. § 1983.

Plaintiff's 42 U.S.C. § 1983 claims should be dismissed (a) as against the DOE, because plaintiff failed to plead that any "action pursuant to official municipal policy" caused any alleged constitutional injury, and (b) as against the individual defendants, because they are protected by qualified immunity.

Further, Plaintiff's complaint fails to set forth facts demonstrating the individual defendants' personal involvement in alleged acts of discrimination and retaliation under all relevant statutes, and requires that the individual defendants be dismissed from those claims.

Finally, and notwithstanding all the other grounds warranting dismissal, all national-origin harassment claims should be dismissed for failure to plead a plausible claim.

## STATEMENT OF FACTS[1]

Plaintiff is a DOE teacher who worked at IS 143 from September 1999 to September 2011, and again from September 2014 through in or about June 2016. Compl. ¶¶ 18-20, 25, 78. Plaintiff self-identifies as a Caucasian female, whose national origin is "that part of Yugoslavia that is now known as Bosnia and Herzegovina." *Id.* ¶ 2.

Plaintiff claims she "suffered repeated instances of sexual harassment, racial harassment, and/or national origin harassment by students at I.S. 143." *Id.* ¶ 26.[2] Plaintiff

---

[1] This statement of facts is based on the allegations in, and exhibit annexed to, Plaintiff's Complaint filed February 21, 2018 (ECF No. 3), which are taken as true for purposes of this partial motion to dismiss only.

[2] Plaintiff also alleges that in April or May 2012 while working as a substitute at IS 218, prior to her return to IS 143, an eighth-grade student "mocked Plaintiff's foreign accent and demanded to know her national origin," then threw a bag a rulers at her face. Compl. ¶ 22. Plaintiff claims she reported this to an online reporting system but allegedly the female student was not suspended. *Id.* Plaintiff also alleges that two years later, in spring 2014, while

claims that in September 2014, a sixth-grade male student, J.A., threw furniture, called Plaintiff a "bitch," and later referred to her as a "Halo blankital" (which Plaintiff understood to mean "white girl") and a "Puta . . . Tuta Loca" (which Plaintiff understood to mean "peasant girl, whore or bitch, crazy female"). *Id.* ¶¶ 27-28. On October 3, 2014, the same student, J.A., allegedly screamed, threw books, drew a penis on classroom books, and stated, "Ms. Coyne suck dick." *Id.* ¶ 29. A couple of weeks later, on October 20, another sixth-grade male student allegedly made "lewd" gesturing, "simulating masturbation while looking a Plaintiff" and "banging on a desk." *Id.* ¶ 30. A few days later, J.A. allegedly "directed lewd gestures and simulated masturbation towards Plaintiff." *Id.* ¶ 31. The same day, J.A. and another student allegedly said: "suck a dick," "suck my dick," and "bitch" in class, and then J.A. banged on Plaintiff's classroom door. *Id.* ¶¶ 31-32. Plaintiff claims that J.A. also "mimicked Plaintiff's foreign accent and facial expressions" in October 2014. *Id.* ¶ 33. According to Plaintiff, also in October, another sixth-grade male student told Plaintiff that one of his peers "got a boner." *Id.* ¶ 34. At the end of October 2014, students allegedly told Plaintiff that J.A. had "completely trashed" her classroom. *Id.* ¶ 35.

Plaintiff claims that early in November 2014, J.A. "threatened" Plaintiff with a spit ball, and called her the "stupidest bitch ever." *Id.* ¶ 36. Also in November, J.A. allegedly "made lewd gestures towards Plaintiff[,] . . . grabbing and pulling on his crotch." *Id.* ¶ 37. Plaintiff claims that in December 2014, another sixth-grade student said "fuck you" to Plaintiff.

---

she was a substitute at Middle School ("MS") 322, eighth-grade students said the following to Plaintiff: "You fucking white bitch" and "[y]a fucking Russian bitch"; one student also allegedly said, "I'll fuck you up, you white crack ho!" *Id.* ¶ 23. Plaintiff allegedly reported this to the administration at MS 322, but allegedly "no action was taken to discipline the students." *Id.* Plaintiff claims the same students "menaced" her in spring 2014 outside of school. *Id.* ¶ 24.

*Id.* ¶ 38. Later in the same month, J.A. allegedly told Plaintiff, "suck my dick," and made "lewd" noises. *Id.* ¶ 39.

Plaintiff claims that on January 6, 2015, two sixth-grade male students "called out to Plaintiff, 'suck my dick.'" *Id.* ¶ 40. The next day, on January 7, another sixth-grade male student, W.M., allegedly did the same, and he allegedly said "suck my dick" again on January 20, 2015. *Id.* ¶¶ 41-42. Also on January 20, two other sixth-grade males allegedly said "suck my ass" and "Droga . . . she is on crack," allegedly referring to Plaintiff.[3] *Id.* ¶ 43. The next month, in February, J.A. allegedly "trashed" Plaintiff's classroom again. *Id.* ¶ 44. In March 2015, according to Plaintiff, a sixth-grade male student "jumped and humped furniture" in her class and "physically pushed Plaintiff with his torso." *Id.* ¶ 45. In April 2015, J.A. allegedly "directed exaggerated lewd moaning and panting sounds" toward Plaintiff. *Id.* ¶ 46. Plaintiff claims that later in April, another sixth-grade male student said "suck my dick" to Plaintiff. *Id.* ¶ 47. In May 2015, J.A. allegedly "laughed in Plaintiff's face and mocked her European accent." *Id.* ¶ 48. J.A. also allegedly stole Plaintiff's flash drive, which contained teaching materials. *Id.* ¶ 49. In June 2015, two sixth-grade male students allegedly screamed "droga" at Plaintiff. *Id.* ¶ 50.

Plaintiff earned an overall "ineffective" rating for the 2014-2015 school year. *Id.* ¶ 51.

The next school year, in November 2015, a sixth-grade male student allegedly played "moaning sounds" from his laptop, "directed to Plaintiff." *Id.* ¶ 52. Later in November, a sixth-grade male student said "you can be sucking my dick" to Plaintiff. *Id.* ¶ 53. Plaintiff claims that on December 1, 2015, a student hit her with a paper ball and referred to her as a

---

[3] Plaintiff understood "droga" to refer to the word "drug"; she understood this to mean that "an individual is slow because they are under the influence of alcohol." *Id.* ¶ 43.

"fucking retard." *Id.* ¶ 54. Also in December, a sixth-grade male student, J.R., allegedly pointed his middle finger towards Plaintiff. *Id.* ¶ 55. In mid-December, a sixth-grade male, A.M., allegedly jumped on Plaintiff's back, threatened to smack her, and "additionally . . . mocked Plaintiff's European accent." *Id.* ¶ 56. This student was suspended, and eventually returned to Plaintiff's classroom. *Id.* Later that month, Plaintiff claims another student said to her, "I will hurt you, just like A.M. did." *Id.* ¶ 57.

Plaintiff alleges that on January 7, 2016, a sixth-grade male student ran into her classroom "recklessly," hitting Plaintiff with his elbow. *Id.* ¶ 59. On January 11, two sixth-grade students allegedly shouted "thot" to her (which she understood to mean a "female who is only good for mindless sex"), and also said "fuck you." *Id.* ¶ 60. The next day, a different sixth-grade student said to Plaintiff, "Who the fuck are you, you ugly white bitch." *Id.* ¶ 61. On January 15, sixth-grade male student J.A. allegedly pushed Plaintiff, and Plaintiff claims he struck her in the face with an unidentified "hard, heavy object." *Id.* ¶ 62. The same day, a different sixth-grade male student allegedly referred to Plaintiff as "ugly old pussy." *Id.* ¶ 63. On January 22, 2016, sixth-grade student J.R. allegedly told Plaintiff that he "ha[d] a big dick," and another student, J.M., said that Plaintiff should "suck my dick during class." *Id.* ¶ 64. Plaintiff also claims that at the end of January 2016, a sixth-grade student, L.R., "trashed Plaintiff's classroom by throwing books on the floor," and said "Fuck you, Ms. Coyne" a few times. *Id.* ¶ 65. In February 2016, sixth-grade student A.M. "barged" into Plaintiff's classroom, "stabb[ing] her with a mechanical pencil." *Id.* ¶ 66. Plaintiff alleges that in March 2016, a sixth-grade student said to Plaintiff, "suck my dick." *Id.* ¶ 67. The next day, another sixth-grade student allegedly told Plaintiff to "suck my ass." *Id.* ¶ 68. On March 16, two sixth-grade male students, including J.R., "punched furniture" and allegedly "ridiculed Plaintiff's European accent

and facial features." *Id.* ¶ 69. After Plaintiff reported this to the dean, J.R. allegedly said to Plaintiff, "you fucking bitch . . . watch, you bitch! . . . my Mother . . . she'll deck you." *Id.* Also in March, J.R. shouted "fucking white bitch" to Plaintiff from the principal's office, allegedly in front of Principal McDaniel-Luke. *Id.* ¶ 70.

In April, J.R. allegedly again called Plaintiff a "white bitch," and told her not to "snitch to [his] mother." *Id.* ¶ 71. J.M. also allegedly kicked Plaintiff in the leg in April. *Id.* ¶ 72. In early May, J.R. "jumped on Plaintiff's head," and upon his return to class, stated, "I hate you bitch," "I'll deck you bitch," and "[g]et that white bitch out of my face." *Id.* ¶ 73. Later the same day, Plaintiff claims that J.R. said to her, in front of Ms. McDaniel-Luke, "fucking skinny ass white bitch," and "[g]et that white bitch out of my face." *Id.* Later in May, a sixth-grade male allegedly said "suck my dick" to Plaintiff. *Id.* ¶ 74. At the end of May, J.R. allegedly said he would "fuck [Plaintiff] up" and "have her fired," pushed Plaintiff, and called her a "bitch" and a "ho." *Id.* ¶ 75. On June 7, J.R. called Plaintiff a "bitch" and a "nigga." *Id.* ¶ 76. The same day, J.R. and A.M. shouted profanities and knocked things over in Plaintiff's classroom, and then said "suck my dick" to Plaintiff. *Id.* ¶ 77. On June 16, J.R. allegedly called Plaintiff a "fucking ugly ass bitch." *Id.* ¶ 78.

Concerning the above alleged student behavior, Plaintiff claims that she variously reported these incidents to either the dean of IS 143, Assistant Principal Matos, Assistant Principal Gil, Principal McDaniel-Luke, the school guidance counselor, the school literacy coach, and/or students' parents. *Id.* ¶¶ 27-50, 52-78. Plaintiff also claims she reported many of these incidents to the "Jupiter Grades online reporting system." *Id.* ¶¶ 27-34, 41-44, 46-48, 50, 52, 54-55, 59-61, 63-65, 67-69, 71-72, 76-78. With few exceptions (*i.e.*, where Plaintiff identifies the discipline the student received), Plaintiff claims—always "*upon information and*

*belief*"—that "Defendants took no action to discipline the student or remove the student from the class." *Id.* ¶¶ 27-50, 52-55, 57-69, 71-74, 76-78 (emphasis added).

Plaintiff was given an "ineffective" overall rating by the school principal for the 2015-2016 school year. *Id.* ¶ 79.

On June 20, 2016, the DOE commenced New York State Education Law § 3020-a disciplinary charges against Plaintiff for "incompetence." *Id.* ¶ 80. An appointed Section 3020-a Hearing Officer sustained certain charges against Plaintiff, and fined her $7,500. *Id.* ¶¶ 5, 80.

Plaintiff claims that the "disciplinary charges were a direct result of Plaintiff's complaints about students who harassed her because of her sex, race, and/or national origin, and sought to blame her for unruly classes that resulted from the administration's failure to protect her and discipline students." *Id.* ¶ 80. On April 4, 2017, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR"), which was "dually filed" with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 82. Plaintiff commenced this litigation on February 21, 2018.

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts "to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation,'" and need not accept as true any conclusory allegations. *Id.* at 678, 681 (quoting and citing *Twombly*, 550 U.S. at 554-55). Thus, a plaintiff must plead facts sufficient to demonstrate "more than a sheer possibility that a defendant has acted unlawfully . . . [and]

[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" and must, therefore, be dismissed. *Id.*; *Twombly*, 550 U.S. at 557, 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").

## POINT I

### PLAINTIFF'S TIME-BARRED CLAIMS SHOULD BE DISMISSED

Many of Plaintiff's Title VII, Title IX, Section 1983, SHRL, and CHRL claims are time-barred. For a Title VII claim to be timely, the plaintiff must file an administrative charge with the EEOC within 300 days of the alleged discriminatory or retaliatory act. *See* 42 U.S.C. § 2000e-5(e)(1); *Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011). Here, Plaintiff alleges she filed an administrative charge on April 4, 2017, with the SDHR, which was dually filed with the EEOC. Compl. ¶ 82. Thus, any discriminatory or retaliatory act that occurred before June 8, 2016, is time-barred and should be dismissed. Indeed, the *only* events alleged to have occurred after that date are Plaintiff's claims that (1) "[o]n or about June 20, 2016, Defendant NYCDOE commenced New York State Education Law § 3020-a disciplinary charges for alleged incompetence against Plaintiff," *id.* ¶ 80 (Plaintiff's alleged retaliation claim); and (2) "[o]n or about June 16, 2016," a sixth-grade male student "screamed" at Plaintiff, "[y]ou're so ugly!! . . . You fucking ugly ass bitch," *id.* ¶ 78.[4]

---

[4] If this Court were to find that the term "bitch" is a gender-related epithet, and part of Plaintiff's gender-based hostile work environment claim, Defendant does not assert a statute of limitations defense against this claim to the extent that it is part of a "continuing violation" under the law. *See, e.g.*, *Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan*, 536 U.S. 101, 114-18 (2002) (discussing contours of continuing-violation doctrine). However, Plaintiff has failed to assert any timely allegations under Title VII related to her race-based and/or national origin–based Title

Section 1983, Title IX, SHRL and CHRL claims are all subject to a three-year limitations period. *See Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (Section 1983); *AB v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 314 (S.D.N.Y. 2005) (Title IX); *Murdaugh v. City of N.Y.*, 10 Civ. 7218, 2011 U.S. Dist. LEXIS 23333, at *10 (S.D.N.Y. Mar. 8, 2011) (SHRL & CHRL). Therefore, since Plaintiff filed this suit on February 21, 2018, her claims under Section 1983, Title IX, the SHRL and CHRL are barred to the extent they are based on alleged events that accrued before February 21, 2015.[5]

## POINT II

### THE SHRL AND CHRL CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS FOR PLAINTIFF'S FAILURE TO FILE A NOTICE OF CLAIM

Plaintiff's claims under the SHRL and CHRL should be dismissed for Plaintiff's failure to file a notice of claim. New York State Education Law § 3813(1) requires that a timely notice of claim be filed "within three months after the accrual of such claim" before a SHRL or CHRL suit may be brought against the DOE or its employees. Indeed, service of a notice of claim is a necessary condition precedent to filing a lawsuit against a school district or its officers. *See Lewinter v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 0227 (PGG), 2010 U.S. Dist. LEXIS 68493, at *7 (S.D.N.Y. July 9, 2010). A plaintiff must plead satisfaction of this requirement, or her

---

VII hostile work environment claims. Accordingly, Plaintiff's Title VII hostile work environment claims based on race and national origin should be dismissed.

[5] As it concerns Plaintiff's hostile work environment claims under these statutes, Defendant asserts its statute of limitations defense only to the extent that the alleged acts are not part of a "continuing violation" under the law. *See, e.g., Morgan*, 536 U.S. at 114-18. In this context, any claims arising out of the complained-of conduct that allegedly took place before the 2014-2015 school year, *see supra* footnote 2, are barred by the statute of limitations, because the conduct is insufficiently related to the complained-of conduct that falls within the limitations period. *See Morgan*, 536 U.S. at 118; *McCullum v. Cedar Graphics, Inc.*, 609 F.3d 70, 77-78 (2d Cir. 2010). Indeed, the few discrete acts Plaintiff claims took place in spring 2012 and spring 2014 allegedly occurred at two different schools— MS 322 and IS 218—months and years before the alleged IS 143 conduct, and these older alleged incidents involved different students and administrators, none of whom are allegedly involved with the conduct that falls within the limitations period. Accordingly, these allegations are not part of Plaintiff's hostile work environment claims. *See Hiralall v. Sentosacare, LLC*, No. 13 Civ. 4437, 2016 U.S. Dist. LEXIS 35781, at *24 (S.D.N.Y. Mar. 18, 2016).

claims will be dismissed.  *Id.*; *Chinatown Apartments, Inc. v. N.Y.C. Transit Auth.*, 100 A.D.2d 824, 826 (1st Dep't 1984).  Plaintiff does not allege that she satisfied this requirement.  Her failure to do so deprives this Court of jurisdiction over Plaintiff's claims under the SHRL and CHRL, and mandates dismissal of those claims.

## POINT III

### PLAINTIFF'S SECTION 1981 CLAIMS ARE NOT COGNIZABLE

Plaintiff's Section 1981 claims should be dismissed.  The Second Circuit recently made clear that Section 1981 does not provide a private right of action against state actors, including the DOE and its employees.  *See Duplan v. City of N.Y.*, 888 F.3d 612, 619-21 (2d Cir. 2018) ("We . . . therefore join nine of our sister Circuits in concluding that § 1981 does not provide a separate private right of action against state actors.").  Accordingly, Plaintiff's Section 1981 claims are not cognizable, and should be dismissed against all the defendants.

## POINT IV

### THE SECTION 1983 CLAIMS AGAINST THE DOE SHOULD BE DISMISSED FOR PLAINTIFF'S FAILURE TO PLEAD A *MONELL* POLICY

Where a plaintiff asserts a Section 1983 claim against a municipality or an individual sued in her official capacity, the plaintiff must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226 (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989) & *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-694 (1978)).  In this context, "[a] school district's liability . . . may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or

(3) that a district employee was acting as a 'final policymaker.'" *Hurdle v. Bd. of Educ.*, 113 F. App'x 423, 424-25 (2d Cir. 2004) (summary order) (internal quotation marks omitted).

Here, as an initial matter, to the extent Plaintiff has failed to state a plausible constitutional claim against the individually named defendants, her claims against defendant DOE also fails. *See, e.g.*, *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *see also infra* Point V. Plaintiff's claims against the DOE under Section 1983 also fail as a matter of law because Plaintiff has not pleaded that any of the alleged discriminatory or retaliatory acts were the result of an official policy, practice, or custom.

Nor has Plaintiff pleaded that the school administrators possessed final policymaking authority under the law with respect to Plaintiff's claims of student-on-teacher harassment, such that their actions could result in municipal liability for the DOE. Even if Plaintiff intends to rely on this theory of municipal liability, it would be deficient as a matter of law. The question of whether a particular official has policymaking authority is an issue of state law to be determined by the Court. *See, e.g.*, *Jett*, 491 U.S. at 737. New York Education Law §§ 2590-g and 2590-h grant final policymaking authority over decisions affecting NYC schools to the DOE Board and the Chancellor—not principals or assistant principals. Indeed, school administrators are expressly subject to the regulations of the Chancellor in exercising their authority. *See id.* § 2590-i ("Subject to the regulations of the chancellor . . . , the principal shall be responsible for the day to day operation of the school . . . ."). Accordingly, the IS 143 administrators cannot be said to have been acting as final policymakers with respect to the DOE, even if their actions were discriminatory or retaliatory. *See Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act

of the municipality.") (plurality opinion); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986) (plurality opinion) (same).

Consistent with this precedent, District Courts in the Second Circuit have repeatedly found that a school principal is not a final policymaker when it comes to municipal employment policy. *See Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 588-89 (S.D.N.Y. 2014) (school principal not final policymaker and complaint failed to allege official policy or custom for constitutional violations under *Monell*); *Dressler v. N.Y.C. Dep't of Educ.*, 10 Civ. 3769 (JPO), 2012 U.S. Dist. LEXIS 44249, at *47-54 (S.D.N.Y. Mar. 28, 2012) (school principal not policymaker with respect to teacher evaluations where Chancellor sets policy on how to conduct evaluations and decision is subject to review); *Moore v. City of N.Y.*, No. 08 Civ. 8879 (PGG), 2010 U.S. Dist. LEXIS 19183, at *15-19 (S.D.N.Y. Mar. 1, 2010) (neither principal nor superintendent are final policymakers for DOE for purpose of discrimination and retaliation claims); *Shapiro v. N.Y.C. Dep't of Educ.*, 561 F. Supp. 2d 413, 420 (S.D.N.Y. 2008) ("New York City school principals do not have final policy making authority over employment decisions concerning teachers in their schools").

Thus, Plaintiff cannot demonstrate the existence of an identified municipal policy or practice that was the "moving force [behind] the constitutional violation[s]." *See Monell*, 436 U.S. at 694; *see also Moore*, 2010 U.S. Dist. LEXIS 19183, at *15-19 (dismissing Section 1983 claims against the DOE, noting that there was no identified "policy, practice, or custom that caused the alleged violations of [plaintiff's] constitutional rights," that the superintendent, principal, and vice principal were not final policymakers, and that the Chancellor was not involved in the alleged violations of constitutional rights).[6]

---

[6] Although Plaintiff names former Chancellor Carmen Farina as an individual defendant in this case, the Complaint does not contain a single factual allegation that implicates Ms. Farina in any of the alleged constitutional violations,

Accordingly, Plaintiff's Section 1983 claims against the DOE and the individuals sued in their official capacities should be dismissed.

## POINT V

## PLAINTIFF'S SECTION 1983 CLAIMS SHOULD BE DISMISSED AGAINST THE INDIVIDUAL DEFENDANTS ON QUALIFIED IMMUNITY GROUNDS

Defendant does not concede that the individual defendants' alleged actions rise to the level of a constitutional violation under Section 1983. But even if they did, the individual defendants are entitled to qualified immunity on Plaintiff's student-on-teacher harassment claims because the contours of her allegedly violated rights were not (and are not) clearly established.

Government officials performing discretionary functions are entitled to qualified immunity if (1) the official's action did not violate clearly established law; or (2) "it was objectively reasonable for the [official] to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996); *see also Anderson v. Creighton*, 483 U.S. 635, 639, 646 (1987) ("The general rule of qualified immunity is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" (citation omitted)). "[B]ecause the doctrine of qualified immunity seeks to protect state actors not only from liability, but from having to defend against protected claims, it is the obligation of the court to consider its availability at the earliest point in the case at which that availability can be determined." *Birch v. City of N.Y.*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("stress[ing] the importance of resolving immunity questions at the earliest possible stage in litigation") and *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

and Plaintiff therefore cannot adequately base a *Monell* claim on the Chancellor's acts or policies. *See also infra* Point VI.

While a constitutional right to be free from harassment based on race, gender, or national origin in public employment may have been clearly established at the time of the alleged acts in this case, it was not—and is not—clearly established that the individual defendants' alleged conduct could constitute actionable hostile work environment claims. *See, e.g.*, *Pena v. Deprisco*, 432 F.3d 98, 115 (2d Cir. 2005) (because the specific alleged substantive due process violation was not clearly established at the time of the alleged incident, individual defendants were entitled to qualified immunity as a matter of law on Plaintiff's Section 1983 claims).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that *what he was doing* violates that right." *Anderson*, 483 U.S. at 640 (emphasis in original). The key question in determining whether a right is clearly established "is whether the state of the law [at the time of the alleged incident] gave [the defendants] fair warning that their treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Further, a right is clearly established only if it "has been affirmed by the Supreme Court or the Second Circuit." *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (noting that the right must also be "defined with reasonable clarity," and that the "conduct at issue would have been understood by a reasonable defendant to be unlawful").

Here, the law governing student-on-teacher "harassment" and the responsibility of the school, and school administrators, is uncertain. Indeed, neither the Second Circuit Court of Appeals nor the U.S. Supreme Court has ruled on the issue. *See, e.g.*, *Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 190 (2d Cir. 2010) ("This Court has not addressed whether student-on-teacher harassment can give rise to a hostile work environment claim."). Thus, even if all Plaintiff's allegations are taken as true, the individual defendants were not on notice that

their actions could have been violative of Plaintiff's rights. *See, e.g.*, *Robinson v. Via*, 821 F.2d 913, 920 (2d Cir. 1987) (noting that qualified immunity applies if "it was not clear at the time" the officials acted "that the interest asserted by the plaintiff was protected by a federal statute"). At the very least, it would have been "reasonable" for the individual defendants to believe "that [their] action[s] did not violate" clearly established law. *Salim*, 93 F.3d at 89; *see also Birch*, 184 F. Supp. 3d at 28-31.

Accordingly, all the individually named defendants are entitled to qualified immunity, and Plaintiff's Section 1983 discrimination and retaliation claims should be dismissed against them.

## POINT VI

### PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED FOR LACK OF THEIR PERSONAL INVOLVEMENT

Qualified immunity aside, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *See, e.g.*, *Farrell*, 449 F.3d at 484 (internal quotation marks omitted). The same is true for Section 1981, the SHRL, and the CHRL: a plaintiff must show that the individual defendants actually took part in the alleged discriminatory or retaliatory act. *See, e.g.*, *Hagan v. City of N.Y.*, 39 F. Supp. 3d 481, 514 (S.D.N.Y. 2014). To plead a claim against an individual defendant, a plaintiff must allege facts tending to show, for example, that the defendant participated in the violation directly; that a supervising defendant, after learning of a violation, failed to remedy the wrong; or that an individual defendant who is a supervisory official "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

### i. Ms. Farina Should Be Dismissed from the Complaint as an Individual Defendant

The complaint does not contain a single factual allegation that implicates defendant former DOE Chancellor Carmen Farina in any of the alleged constitutional violations, or acts of discrimination or retaliation. *See* Compl. Plaintiff alleges conclusorily and repeatedly—and "[u]pon information and belief" only—that, in response to Plaintiff's complaints about particular students' behavior, "Defendants took no action to discipline the student[s] or remove [them] from the class." Although these allegations purport to include the conduct of Ms. Farina, they are insufficient to state a plausible claim against the former chief executive officer of the DOE. Indeed, these conclusions aside, there is no factual allegation that Ms. Farina took any action, made any policy, or was involved in any decision to discriminate or retaliate against Plaintiff, or that she was aware of any such constitutional violation. In the absence of allegations showing her personal involvement, Ms. Farina should be dismissed from the Complaint as an individual defendant.

### ii. Plaintiff's Retaliation Claims Should Be Dismissed Against the Individual Defendants

If this Court were to construe Plaintiff's "ineffective" ratings as alleged retaliatory acts, Compl. ¶¶ 51, 79, Plaintiff does not allege the personal involvement of Ms. Gil, Ms. Matos, or Ms. Farina in those ratings. She alleges only that "the school principal" (Ms. McDaniel-Luke) was involved with her 2015-2016 ineffective rating. *Id.* ¶ 79. Therefore, Ms. Gil, Ms. Matos, and Ms. Farina should be dismissed with respect to Plaintiff's ineffective-rating retaliation claims.

## POINT VII

## PLAINTIFF'S NATIONAL ORIGIN HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED

Plaintiff fails to state any plausible hostile work environment claims based on her national origin. To survive a motion to dismiss, a plaintiff pleading a hostile work environment claim must allege facts showing that the complained-of conduct: "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (ellipsis, quotations, citation omitted) (Title VII); *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (Title IX) (collecting cases); *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320 (2d Cir. 2015) (§§ 1981 & 1983); *Murdaugh*, 2011 U.S. Dist. LEXIS 23333, at *14 (SHRL).

In considering whether an environment is hostile, courts look to the "totality of the circumstances," which includes the frequency and severity of the conduct, if it is threatening and humiliating or merely an offensive utterance, and if it interferes with plaintiff's work performance. *Patane*, 508 F.3d at 113. To be considered "pervasive," the incidents must be "more than episodic"; they must be "sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

Plaintiff has not alleged sufficient facts to state a claim of national-origin hostile work environment. The following are the only timely allegations that could be construed to refer, indirectly, to Plaintiff's national origin:

- "On or about October 27, 2014, the 6th grade male student J.A. threw books and mimicked Plaintiff's foreign accent and facial expressions." Compl. ¶ 33.

- "On or about May 11, 2015, 6th grade male student J.A. laughed in Plaintiffs face and mocked her European accent." *Id.* ¶ 48.

- "On or about December 16, 2015, 6th grade male student A.M. jumped on Plaintiff's back," threatened to "smack" Plaintiff, and "mocked Plaintiff's European accent." *Id.* ¶ 56.

- "On or about March 16, 2016, 6th grade male students J.R. and J.M. recklessly punched furniture and ridiculed Plaintiff's European accent and facial features." *Id.* ¶ 69.

These alleged acts—four instances of different sixth-grade students "mocking" Plaintiff's European accent, spread out over a period of a year and a half—do not give rise to the type of severe or pervasive conduct necessary for a hostile work environment claim. *See, e.g.*, *Richard v. N.Y.C. Dep't of Educ.*, No. 16-CV-957 (MKB), 2017 U.S. Dist. LEXIS 50748, at *39 (E.D.N.Y. Mar. 31, 2017) ("Standing alone, the comments regarding Plaintiff's accent and the isolated comment referring to another black DOE employee are not sufficient to state a hostile work environment claim."); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 680 (S.D.N.Y. 2011) (holding that allegations that supervisors smirked and laughed at plaintiff and her pronunciation of words, criticized her manner of speech, and ridiculed her speech, were insufficiently severe or pervasive to establish a Title VII or NYSHRL hostile work environment claim).

Thus, by any measure, Plaintiff has failed to plausibly allege that her workplace was "permeated with discriminatory intimidation, ridicule, and insult" based on her national origin, or that it was objectively severe or pervasive enough to alter the conditions of her employment. *See Littlejohn*, 795 F.3d at 320-21.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their partial motion to dismiss the Complaint, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 18, 2018

**ZACHARY W. CARTER**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-111
New York, New York 10007
(212) 356-3187
smacleod@law.nyc.gov

By: _____*/s/ Shawna C. MacLeod*_____
     Shawna C. MacLeod
     Assistant Corporation Counsel

TO:    Bryan D. Glass, Esq. (via ECF)